# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| INTELLOR GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN J. CICERO,<br><br>Defendant. | Civil Action No. TDC-19-0010 |

## MEMORANDUM OPINION

Plaintiff Intellor Group, Inc. ("Intellor") has filed this civil action against Defendant Brian J. Cicero, a former Intellor employee, alleging that Cicero misappropriated confidential information in breach of his contractual and fiduciary obligations and in violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law §§ 11-1201 to 1209 (West 2013). Now pending is Cicero's Motion to Dismiss the Amended Complaint. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be denied, but this case will be transferred to the United States District Court for the Western District of New York.

## BACKGROUND

Intellor, a Delaware corporation based in Maryland, provides webinar and event conferencing services. Cicero began working for Intellor as Director of Sales/Business Development on January 15, 2008. Throughout the duration of his employment with Intellor, Cicero worked remotely from his home in New York. Originally, Cicero's job responsibilities

were to originate and close new customer sales on behalf of Intellor, but at some point after March 2010, Intellor changed Cicero's primary responsibilities to supporting AT&T's efforts to resell Intellor's webinar and related event conferencing services under a resale agreement between AT&T and Intellor. In light of this change in responsibilities and Cicero's increased exposure to Intellor's and AT&T's confidential information, Cicero signed a Confidentiality Agreement at Intellor's request on or about August 1, 2017. Section 5 of the Confidentiality Agreement bars Cicero from disclosing or using for personal gain the confidential information of Intellor or its customers and any other proprietary information obtained through employment with Intellor. It also requires Cicero to return all confidential or proprietary information to Intellor upon the termination of his employment with Intellor. Section 6 similarly bars Cicero from disclosing confidential customer information procured through any servicing of webinars and related events. Section 7 of the Confidentiality Agreement prohibits Cicero from soliciting or competing for Intellor's customers for a period of two years after the termination of his employment with Intellor.

On October 10, 2018, Intellor sent a letter to Cicero terminating his employment and offered him severance pay in return for his execution of a Separation Agreement. In response, Cicero's attorney, Jill K. Schultz, sent a letter to Intellor on October 25, 2018 proposing various revisions to the Separation Agreement. The letter stated that Intellor had failed to pay Cicero sales commissions required under New York labor law and that Intellor owed Cicero unpaid bonuses. It further asserted that the Confidentiality Agreement was unenforceable. Attached to the letter was a spreadsheet detailing the commission balance that Cicero claimed Intellor owed him. Finally, the letter stated, "While Cicero would have successful legal claims against Intellor,

2

he would prefer, if possible, to conclude the matter amicably." Joint Record ("J.R.") 47, ECF No. 38.

On November 6, 2018, counsel for Intellor, Thomas J. Sawyer, sent an email to Schultz requesting until November 13, 2018 to investigate the matters raised in Schultz's October 25, 2018 letter and extending the deadline for Cicero to execute the Separation Agreement to that date. In a November 9, 2018 letter, Schultz responded by accepting the extension of time for Cicero to execute the Separation Agreement and stating, "Likewise, I agree not to commence litigation against Intellor prior to November 13, 2018." J.R. 52. In that letter, Schultz provided an analysis of Intellor's "liability and damages" for failing to pay Cicero his earned commissions and ended with the statement, "If this matter is not resolved, we will commence litigation against Intellor, Rist, and any other eligible Intellor shareholder." J.R. 52, 54. The letter also requested that Intellor amend the Separation Agreement to state that Cicero is not bound by the Confidentiality Agreement.

Once again, Sawyer responded to Schultz with an email requesting additional time—until November 20, 2018—to consider Cicero's allegations and agreeing in turn to extend the deadline for Cicero to execute the Separation Agreement to the same date. Then, on November 14, 2018, Sawyer sent a letter to Schultz stating that the spreadsheets attached to Schultz's previous two letters reflected highly sensitive AT&T customer and revenue information, in violation of Sections 5 and 6 of the Confidentiality Agreement. The letter demanded the return of all proprietary information and for the first time threatened that, should Cicero fail to return the confidential information by November 20, 2018, "Intellor would have no alternative but to pursue an appropriate civil action against him in a Maryland court as provided under sections 10

and 11 of the Confidentiality Agreement and for his related violation of the Maryland Uniform Trade Secrets Act and breach of fiduciary duty." J.R. 58.

On November 20, 2018, Sawyer sent Schultz another letter in which he rejected Cicero's claims for unpaid commission and bonuses and stated that Intellor would vigorously defend against any lawsuit filed by Cicero. The letter again stated that Cicero's retention and use of Intellor's confidential information to support his unpaid compensation claims violated Sections 5 and 6 of the Confidentiality Agreement. It also stated, "Contrary to the assertion in your October 25 letter, Mr. Cicero will not be able to avoid such liability by challenging the enforceability of the Confidentiality Agreement." J.R. 64.

On November 20, 2018 and November 21, 2018, Sawyer and Schultz exchanged voicemails in an effort to arrange to discuss this matter. Sawyer called Schultz and left a voicemail again on November 26, 2018. On November 27, 2018, Cicero filed a complaint ("the New York Complaint") in the Supreme Court in Monroe County, New York, and served it on Intellor that same day. The New York Complaint names Intellor and Richard A. Rist, Chief Executive Officer of Intellor, as defendants and contains three causes of action: (1) a claim against Intellor for unpaid compensation under New York Labor Law § 191(1)(c) and § 198(1-a); (2) a claim against Rist for unpaid compensation under New York Business Corporation Law § 630; and (3) a claim seeking a declaratory judgment, pursuant to New York Civil Practice Law and Rules § 3001, concluding that the Confidentiality Agreement is unenforceable in all respects and that Cicero has not breached any of its terms. On December 21, 2018, Intellor and Rist removed the New York Complaint to the United States District Court for the Western District of New York and in that case ("the New York Case") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which remains pending. Finally, on January 2, 2019, Intellor

filed the instant action in this Court against Cicero, asserting causes of action for (1) breach of contract, (2) breach of fiduciary duty, and (3) a violation of MUTSA.

## DISCUSSION

In his Motion to Dismiss, Cicero seeks dismissal of Intellor's Amended Complaint pursuant to the first-to-file rule. He argues that the New York Complaint, filed prior to the instant action, is substantially similar to this case such that litigating both cases would risk inconsistent rulings and constitute a waste of resources for both the parties and the courts. In its memorandum in opposition to the Motion, Intellor contends that: (1) there is no proper motion before the Court; (2) the New York Case and the present case are separate and distinct cases; (3) the declaratory judgment count in the New York Complaint was improperly filed in anticipation of litigation to be filed by Intellor in Maryland; and (4) if the Court finds the first-to-file rule applicable, rather than dismissing this case, it should sever the breach of contract count from the Amended Complaint, transfer it to the Western District of New York, and retain the MUTSA claim.

### I. Legal Standard

The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982). Under the rule, "the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'" *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (quoting *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir. 1951)). The rule is not inflexible; rather, a court could allow a later filed case to proceed if it has progressed further toward resolution, because the rule's purpose is "to promote the efficient use of judicial

5

resources and it should be applied in a manner serving sound judicial administration." *United States v. Brick*, 846 F.2d 74, 1988 WL 33796, at *1 (4th Cir. 1988) (unpublished).

In considering whether to apply the first-to-file rule, most courts begin by considering three non-exhaustive factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. *See, e.g., Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018); *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016); *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 666 (D. Md. 2011). Even if applicable based on these factors, a court may decline to apply the rule if the "balance of convenience" favors the second action. *Ellicott Mach. Corp.*, 502 F.2d at 180 n.2. Some courts have also declined to apply the first-to-file rule when they have found compelling circumstances supporting its abrogation, such as "bad faith, anticipatory suit, and forum shopping." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (internal citations omitted). The United States Court of Appeals for the Fourth Circuit has not stated explicitly whether such special circumstances may warrant an exception to the first-to-file rule, *see Learning Network, Inc. v. Discovery Communications, Inc.*, 11 F. App'x 297, 301 n. 2 (4th Cir. 2001), but it has consistently looked with disfavor upon races to the courthouse and forum shopping, particularly in the context of declaratory judgments. *See, e.g., Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821, 824 (4th Cir. 2000); *Centennial Life Ins. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996); *see also Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435-36 (D. Md. 2018) (assessing whether the plaintiff filed the first suit as an "improper act of forum shopping" in its consideration of whether to apply the first-to-file rule to a declaratory judgment case).

A district court entertaining a motion pursuant to the first-to-file rule has discretion to stay, dismiss, or transfer the second-filed action. *See, e.g., Alltrade, Inc.*, 946 F.2d at 623 (stating that the first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court"); *Butler*, 800 F. Supp. 2d at 665 (stating that the second-filed case may be "stayed, transferred, or enjoined"). Thus, in response to Intellor's first argument that there is no proper motion before the Court, the Court finds that although Cicero's Motion does not squarely fit into one of the categories under Rule 12 of the Federal Rules of Civil Procedure, the Motion to Dismiss is proper in that it asks the Court to exercise its discretionary authority to dismiss this action in favor of the New York Case.

## II. Chronology

To begin, the Court examines the chronology of events. Here, there is no dispute that Cicero filed the New York Complaint on November 27, 2018 and Intellor filed the present case on January 2, 2019, over a month later. Furthermore, the record does not support the claim that Cicero filed the New York Complaint as a means of forum shopping in anticipation of the filing of a lawsuit by Intellor in Maryland. In order for a first-filer to be deemed to have engaged in an anticipatory lawsuit, the other party typically would at least have to be the first to threaten litigation. *See, e.g., Learning Network*, 11 F. App'x at 300, 302 (rejecting a claim that Learning Network's first-filed declaratory judgment action was anticipatory when Discovery Communications's cease-and-desist letter did not actually threaten litigation); *First Nationwide Mortg. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 671-74 (D. Md. 2002) (dismissing the plaintiff's first-filed action where the defendant had been the first to threaten litigation). Here, Cicero was the first to make a demand on Intellor and to threaten litigation. In Schultz's October 25, 2018 letter to Intellor, she stated that Cicero would have successful legal claims against

Intellor, despite his preference to resolve the matter amicably, and the letter specifically referenced the Confidentiality Agreement. Although that discussion focused on Section 7 of the Confidentiality Agreement, which relates to the non-competition provisions rather than the confidentiality provisions, the letter specifically argued that the Confidentiality Agreement in its entirety was unenforceable for lack of consideration and sought an agreement by Intellor that Cicero was not bound by it.

If the threat of litigation was somehow unclear in the October 25, 2018 letter, Schultz's November 9, 2018 letter explicitly conveyed that Cicero intended to sue if Intellor did not meet his demands. The November 9 letter provided an updated analysis of Intellor's "liability and damages," continued to seek an agreement that Cicero was not bound by the Confidentiality Agreement, and ended with the statement, "If this matter is not resolved, we will commence litigation against Intellor, Rist, and any other eligible Intellor shareholder." J.R. 54. Schultz agreed not to commence litigation against Intellor before November 13, 2018 but made no promises beyond that date, discrediting any argument from Intellor that it was sandbagged during settlement negotiations by Cicero's lawsuit. In contrast, Intellor did not threaten litigation to enforce the Confidentiality Agreement until November 14, 2018, nearly three weeks after Cicero's initial letter. Indeed, Intellor could not have made such a threat before the October 25, 2018 letter because the basis for Intellor's suit was an attachment to the October 25, 2018 letter, which allegedly revealed that Cicero was still in possession of proprietary Intellor data. At the time of Intellor's threat, Cicero had already asserted his intent to engage in litigation over a pay dispute that encompassed the general enforceability of the Confidentiality Agreement, including an argument—lack of consideration—that would apply to both the confidentiality and non-competition parts of that contract. Even after Cicero filed the New York Case, Intellor did not

file the present case until January 2, 2019, six weeks later. Accordingly, where Cicero filed the New York Case over a month before Intellor's suit, and the record does not support the claim that that he did so as anticipatory litigation to engage in forum shopping, the Court finds that the chronology weighs in favor of application of the first-to-file rule.

**III.   Similarity of Parties**

Next, the Court examines the similarity of the parties in both suits. The only difference between the parties here and in the New York Case is that Rist, the Chief Executive Officer of Intellor, is named as a co-defendant with Intellor in New York but is not a plaintiff here. The presence of Rist in the New York Case is of little consequence, particularly where Rist and Intellor's interests are aligned and they are represented by the same attorneys. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (holding that the first-to-file rule does not require an exact identity of parties and finding a substantial similarity of parties when an additional defendant was named in the first but not the second suit). Accordingly, this factor also weighs in favor of application of the first-to-file rule.

**IV.   Similarity of Issues**

Third, the Court assesses the similarity of the issues and claims in the New York Case and the present case. Courts place less weight on this factor when similar suits are pending before two federal courts than they do when one case is in state court, as there is no risk of depriving a litigant of a federal forum. *See Wakaya*, 910 F.3d at 1126-27. For the first-to-file rule to apply, a precise alignment of the issues is not required so long as the issues "substantially overlap" such that resolution of one case leaves little to be determined in the other. *Baatz*, 814 F.3d at 791; *see also Fisher v. Rite Aid Corp.*, No. RDB-09-1909, 2010 WL 2332101, at *2 (D. Md. June 8, 2010) (finding substantial similarity between a lawsuit brought under the Fair Labor

Standards Act ("FLSA") and a second suit brought under the Maryland state law analog to the FLSA). Here, there is undisputed overlap between the declaratory judgment count in the New York Complaint and the breach of contract claim in Intellor's Amended Complaint, both of which require a determination whether the Confidentiality Agreement is enforceable. This identity of issues risks directly conflicting rulings because if Cicero were to secure a declaratory judgment in the New York Case invalidating the Confidentiality Agreement in its entirety, a ruling here in favor of Intellor on its breach of contract claim would be in conflict. *See, e.g., Baatz*, 814 F.3d at 789 (stating that the first-to-file rule protects against "the possibility of conflicting results").

Intellor correctly notes that the remaining claims, particularly the wage claims in the New York Complaint, do not directly overlap. While the overlap of the declaratory judgment and breach of contract claims alone may provide sufficient justification to prevent separate litigation of these cases, closer review reveals that the cases are even further entangled. Ultimately, the success of Cicero's New York wage claims may turn on the enforceability of the Confidentiality Agreement. If this Court were to find that Cicero breached the Confidentiality Agreement or misappropriated Intellor data, there may be a need to order the return of the proprietary data in his possession to Intellor, superseding the Consent Order currently in place which permits Cicero's counsel to hold the data while this case is pending. Such an order would, as stated by Cicero's counsel during the Case Management Conference on January 10, 2019, effectively prevent Cicero from prosecuting his wage claims in the New York Case. On the other hand, the court in the New York Case could decide that Cicero should be permitted to use the Intellor data to calculate the unpaid bonuses and commissions he is seeking through his wage claims, or that the data could be appropriately sought as a matter of discovery on those claims, which could be

inconsistent with the relief sought in the present case that all Intellor materials be returned or destroyed. In any event, the fundamental reliance of Cicero on the allegedly misappropriated data in advancing his wage claims the New York Case reveals that all claims in the two cases are sufficiently intertwined to merit application of the first-to-file rule.

V.      **Balance of Convenience**

Although all of the factors weigh in favor of application of the first-to-file rule, because the doctrine is discretionary, a court may decline to apply the rule against the second-filed case if the "balance of convenience" establishes that the matter should be heard in the forum in which the second-filed case was initiated. *See Ellicott Machine Corp.*, 502 F.2d at 180; *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 901 (D. Md. 2008). In assessing the "balance of convenience," courts weigh the factors set forth in 28 U.S.C. § 1404 relating to a motion to transfer venue. *Employers Ins. of Wausau*, 522 F.3d at 275; *Neuralstem, Inc.*, 573 F. Supp. 2d at 901. Under that provision, a court considers whether "[f]or the convenience of parties and witnesses" and "in the interest of justice," a case should be transferred to another district in which the case could have been filed. 28 U.S.C. § 1404(a) (2012); *see Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984). It is undisputed that this case could have been brought in the Western District of New York. The factors considered under § 1404 are: (1) the weight accorded to the plaintiff's choice of forum; (2) witness convenience and access to sources of proof; (3) the convenience of the parties; and (4) the interest of justice. *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.* ("*Trustees*"), 791 F.3d 436, 444 (4th Cir. 2015); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D. Md. 2002).

11

A.  **Plaintiff's Choice of Forum**

Turning to the first factor, the plaintiff's choice of forum, under § 1404 the general rule is that the plaintiff's preference is afforded "substantial weight in determining whether transfer is appropriate." *Trustees*, 791 F.3d at 444. The deference accorded to the plaintiff's choice of forum, however, should be proportional to the relationship between the forum and the cause of action. *See Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237-38 (2d Cir. 2004) (affirming the district court's venue determination based in part on the conclusion that the weight accorded to the plaintiff's choice of forum was "diminished" because the cause of action did not have "significant ties" to that forum); *Bannister v. Wal-Mart Stores East, L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) (according lesser weight to the plaintiffs' choice of forum because they were not residents of the forum state and alleged discrimination at their workplace in a different state). Although Intellor argues that its choice of forum should prevail because it is a Maryland-based corporation that filed suit in Maryland, Cicero was employed in New York throughout the duration of his employment with Intellor, and all of the alleged acts of breach of the Confidentiality Agreement and misappropriation occurred in New York, not Maryland. To the extent that Cicero had contact with Intellor employees located in Maryland, those contacts are not the subject of the dispute at issue in the present case. Accordingly, the Court grants less weight to this factor than it would if Cicero's alleged breach of contract and misappropriation of trade secrets had a stronger connection to Maryland. *See Capitol Payment Sys., Inc. v. Di Donato*, No. ELH-16-882, 2017 WL 2242678, at *9 (D. Md. May 23, 2017) (under similar circumstances, holding that the weight given to a Maryland corporation's forum choice was diminished where the underlying dispute, as well as all of the defendant's merchant relationships, were located in New York and New Jersey).

## B. Witness Convenience and Access to Sources of Proof

On the second factor, it is unlikely that the present case will involve many fact witnesses. Where Cicero does not appear to dispute his possession of the allegedly confidential data in question, the issue of whether his possession of the data constitutes misappropriation of trade secrets, a breach of contract, or a breach of fiduciary duty is likely a question of law. To the extent that witnesses are needed, they likely would consist of AT&T employees and customers who conducted business directly with Cicero, forensic computer analysts who reviewed the data stored on various electronic devices owned by Cicero, or Intellor employees who supervised Cicero or helped draft the Confidentiality Agreement. The customers who interfaced directly with Cicero are, if anything, more likely to be based in New York, where Cicero conducted all of his work, than in Maryland. Although there is no evidence in the record regarding where the forensic analysts are based, the parties informed the Court that at least some of the review of Cicero's devices took place at or near his home in New York, suggesting that some of the analysts are based there. As for any Maryland-based Intellor employees who might testify at a trial, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3851 (4th ed. Nov. 2018 update) (citing 12 different district court opinions); *see also Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) (noting that "[t]he convenience of non-party witnesses should be afforded greater weight [than the convenience of the parties] in deciding a motion to transfer venue"). This principle is sensible because non-parties cannot be required to travel out-of-state and more than 100 miles away, as would be required to appear in Maryland for trial. Fed. R. Civ. P. 45(c). Accordingly, where the location of witnesses in this case is uncertain but it is likely that some

non-party witnesses are based in New York and that certain Intellor employee witnesses are based in Maryland, this factor is generally neutral.

C.  **Convenience of Parties**

In many cases, a different choice of forum would merely "shift the balance of inconvenience" from one party to another. *See Bd. of Trustees, Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1259. Such appears to be the case here. The Court notes that both parties could anticipate a lawsuit in either forum. By hiring Cicero as a remote employee and permitting him to conduct the entirety of his work for Intellor in New York, Intellor purposely availed itself of that forum and the possibility that it would be subject to litigation there. Likewise, Cicero, by joining a Maryland company, could certainly have contemplated a legal action in Maryland. To the extent that this factor favors one party, it would be Cicero, an individual, rather than Intellor, because Intellor likely has more resources to pursue a case in an out-of-state forum. Indeed, Intellor's attorneys have been admitted to practice before the United States District Court for the Western District of New York and, in fact, removed the New York Case to that forum.

D.  **Interests of Justice**

As for the interests of justice, this element "relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). As relevant here, the only consideration specifically addressed by the parties is the applicable law to be applied. *See Aphena Pharma Solutions-MD LLC v. BioZone Laboratories, Inc.*, 912 F. Supp. 2d 309, 320 (D. Md. 2012) (stating that "[f]amiliarity with applicable law is one of the interest of justice factors"). "There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws,

and in law foreign to itself." *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964). However, this factor is "given significantly less weight when the case involves basic or sufficiently well-established . . . issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state." *Capitol Payment Sys.*, 2017 WL 2242678, at *11 (alteration in original).

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits, in this case, Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Intellor's breach of contract claim is governed by Maryland law because the Confidentiality Agreement, although lacking a forum selection clause, contains a choice-of-law provision stating the Maryland law shall apply to disputes arising from it. However, there is no evidence that Maryland contract law is "so unique or complicated as to prevent a [New York] judge from being able to discern and apply it." *Capitol Payment Sys.*, 2017 WL 2242678, at *12; *see also Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y. 2003) (noting that contract law is not so complex that it would significantly burden a federal court to apply a different state's contract law).

On a claim for breach of fiduciary duty, which involves "a matter peculiar to the relationships among and between the corporation and its directors," Maryland courts apply the law of the state of incorporation, in this case, Delaware. *See Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 372-73 (Md. Ct. Spec. App. 2006), *aff'd* 915 A.2d 991 (Md. 2007) (holding that because the plaintiff corporation was incorporated in Delaware, the trial court erred in not applying Delaware law to its claim that the defendant had breached his fiduciary duty); *Restatement (Second) of Conflict of Laws* § 309 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's

liability to the corporation[.]"). Thus, where Intellor's breach of fiduciary duty claim would be governed by Delaware law, this Court has no advantage over the Western District of New York in interpreting the claim.

As for the MUTSA claim, under Maryland law, the principle of *lex loci delicti* applies to tort claims, under which courts apply the law of the state in which the injury occurred. *Lab Corp of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). "The place of injury is also referred to as the place where the last act required to complete the tort occurred." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000). Under Maryland law, for the tort of misappropriation of trade secrets, the last act necessary to complete the tort is either the acquisition of the trade secret by improper means or the improper use or disclosure of the trade secret. *See* Md. Code Ann., Com. Law § 11-1201(c); *DTM Research, L.L.C. v. AT & T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001). Accordingly, "[i]n breach of confidence and misappropriation cases involving application of the lex loci delicti rule, many courts have held that the injury occurs when the information is improperly used" and occurs at the location where it is used improperly to develop a new product, such as at the defendant's research facility. *Tenax Corp. v. Tensar Corp.*, No. H-89-424, 1990 WL 152565, at *4 (D. Md. May 31, 1990) (citing *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219 (7th Cir. 1982)); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1140 (11th Cir. 2005) (citing *Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 735 F. Supp. 1555, 1568 (M.D. Ga. 1989), for the proposition that "[i]n a trade secret misappropriation case, the *lex loci delicti* is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred"); *see RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (holding that the misappropriation of a trade secret occurred at the location of the defendant's business); *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d

460, 478 (D. Md. 1999) (noting that there is no clear basis for applying MUTSA when the misappropriation—the defendant's disclosure of a confidential business plan—occurred in Virginia); *see also Eaton Corp. v. Appliance Valves Corp.*, 526 F. Supp. 1172, 1178 & n.1 (N.D. Ind. 1981), *aff'd sub nom. Eaton Corp. v. Appliance Valve Corp.*, 688 F.2d 842 (7th Cir. 1982) (holding that under the principle of *lex loci delicti*, Indiana law applied because the misappropriation occurred at defendant's principal place of business in Indiana, even though the trade secrets were taken from plaintiff's facility in Illinois).

Here, it appears that any misappropriation of trade secrets by Cicero occurred in New York where Cicero both acquired and held the confidential information and allegedly used it for his own advantage, so Intellor's misappropriation of trade secrets claim likely should have been brought under New York law rather than under MUTSA. New York is one of only two states that has not adopted the Uniform Trade Secrets Act. *See Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 220 (S.D.N.Y. 2010); Uniform Law Commission, *Trade Secrets Act Legislative Bill Tracking*, (Jan. 25, 2019), https://www.uniformlaws.org/committees/community-home?CommunityKey=3a2538fb-e030-4e2d-a9e2-90373dc05792. Where the substantive analysis of Intellor's misappropriation claim may be different under New York law, a court in New York would likely be better equipped to apply it.

In sum, where Maryland law applies to Intellor's breach of contract claim, Delaware law applies to Intellor's breach of fiduciary duty claim, and New York law applies to Intellor's misappropriation of trade secret claim, the applicable law element of the interests of justice factor is effectively neutral.

Upon consideration of the four components of the balance of convenience analysis, the Court finds no compelling argument for either forum that would provide a basis to deviate from

the first-to-file rule. Thus, based on the foregoing analysis, the Court will apply that rule in favor of the first-filed New York Case.

## VI. Transfer

Overall, the overlapping facts and interdependence of the claims in the two cases warrant application of the first-to-file rule in favor of Cicero's first-filed New York Case. However, the presence of the MUTSA and breach of fiduciary duty claims in the present case counsels against dismissal of this action, as doing so would, at least temporarily, deprive Intellor of its opportunity to litigate related, but distinct, claims. *Cf. First Nationwide*, 219 F. Supp. at 674 (dismissing the first-filed action in favor of the second-filed action where disposition of the second action would resolve the entire dispute between the parties). Furthermore, if this Court were to dismiss Intellor's breach of contract and MUTSA claims in favor of the first-filed New York declaratory judgment count, and the court in the New York Case then denied Cicero the requested declaratory judgment, Intellor arguably could then re-file its MUTSA claim and begin litigation anew, which ultimately would inconvenience both parties and both courts. *See id.* Thus, dismissal of the present case is not appropriate.

The first-to-file rule, however, permits transfer of the second-filed case to the forum of the first-filed case. *See, e.g., Alltrade, Inc.*, 946 F.2d at 623; *Butler*, 800 F. Supp. 2d at 665. Although Intellor's motion was not styled as a motion to transfer venue, both parties addressed the possibility of transfer as an alternative to dismissal in their briefs. As discussed above, the New York Case and Intellor's action here are part of the same case and controversy arising from the termination of Cicero's employment at Intellor. Under these circumstances, "[t]ransfer is favored not only because litigation of related claims in the same tribunal may facilitate efficient pretrial proceedings and discovery but also because it avoids inconsistent results." *D2L Ltd. v.*

18

*Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009). Where the Court has determined that the consolidation of these two cases would preserve judicial resources and avoid duplicative litigation, Intellor's suggestion that the Court sever the breach of contract claim and transfer only that count to New York is illogical, as it would still result in two courts deciding claims based on the same underlying transactions, with the same waste of judicial resources and possibility of inconsistent outcomes.

Accordingly, the Court will order that this case be transferred to the Western District of New York for consolidation with Cicero's suit pending there.

## CONCLUSION

For the foregoing reasons, Intellor's Motion to Dismiss will be DENIED, but this case shall be TRANSFERRED to the United States District Court for the Western District of New York. A separate Order shall issue.

Date: April 16, 2019

THEODORE D. CHUANG
United States District Judge